STRINGER, Judge.
C.W. challenges a community control order issued after he was found guilty of criminal mischief for attempting to break into a car. We reverse the community control order.
After reports that C.W. was involved in the incident, Detective Hassell interviewed the juvenile at school. Because C.W. is hearing impaired, his assistant principal solicited the help of a school coach to serve as an interpreter during Detective Has-sell’s interview. Detective Hassell read the Miranda[1] warning, and the coach in turn signed the warning to C.W. C.W. then confirmed, by signing to the coach, that he understood the warning but was nevertheless willing to talk with Detective Hassell. It appears from the record that C.W. did not speak at all during the interview, but rather, all of his statements, including his Miranda waiver, were communicated by signing through the coach who interpreted to Detective Hassell.
During the State’s direct-examination of Detective Hassell at trial, defense counsel objected to Hassell’s testimony concerning statements C.W. made during his interview. Counsel argued that C.W.’s statements were inadmissable because the State had not yet established that his Miranda waiver was voluntary and intelligent. Counsel’s objection was overruled, and Detective Hassell was allowed to testify that during the interview C.W. admitted that he jimmied a lock on the car door while another boy stood by as lookout. Detective Hassell admitted on cross-examination that he was unfamiliar with the coach’s qualifications as an interpreter and therefore could not be certain that C.W. understood the Miranda warning. Detective Hassell was the only witness present at the interview who testified at trial. The coach who interpreted did not testify.
On appeal C.W. argues that the trial court erred in admitting Detective Has-sell’s testimony regarding his admissions and in denying his judgment of acquittal because the State failed to demonstrate that his Miranda waiver was voluntary and intelligent. We agree.
When a confession is obtained following a Miranda warning, the State has the heavy burden of proving that the defendant knowingly and intelligently waived his or her privilege against self-incrimination and right to counsel, particularly where, as here, the suspect is a juvenile. See Ramirez v. State, 739 So.2d 568 (Fla.1999), cert. denied, 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000). Generally speaking, Miranda waivers given through third-party interpreters are valid. See Hawk v. State, 718 So.2d 159 (Fla. 1998).
As does this case, Hawk, 718 So.2d 159, involved a hearing impaired defendant who made admissions via an interpreter during a custodial interrogation. The defendant later sought to suppress his admissions by arguing that they were involuntary. The *464 court rejected this argument, finding that testimony of the arresting officer and the interpreter, as well as a transcript of the interview, indicated that Hawk understood his rights and answered questions posed by the arresting officer without any difficulty.
Hawk is distinguishable and is not controlling in the present case for two reasons. First, the transcript of the interview conducted in Hawk was admitted at trial and clearly demonstrated the defendant’s Miranda waiver. Second, the interpreter testified in Hawk and was therefore able to confirm, under oath, the accuracy and content of her interpretations. In contrast, the State did not have the benefit of the interpreter’s testimony in this case. The State was, therefore, unable to establish that the coach accurately signed the Miranda warning to C.W. or that C.W. communicated his full understanding and made a voluntary waiver thereafter. Thus, it was error to admit C.W.’s statements at trial.
Reversed.
PARKER, A.C.J., and GREEN, J., Concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966)